**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____
                                 :
MARK CREVELING,                :
                                 : Civil Action No. 11-667 (SDW)
Plaintiff,                  :
                                 :
v.                                 : **O P I N I O N**
                                 :
STEVE JOHNSON, et al.,     :
                                 :
Defendants.               :
                                 :
_____

**APPEARANCES:**

Mark Creveling, Plaintiff pro se
161
Adult Diagnostic and Treatment Center
8 Production Way, trl, #2
Special Treatment Unit, CN - 905
Avenel, New Jersey 07001

**WIGENTON,** District Judge

      Plaintiff, Mark Creveling ("Plaintiff"), an involuntarily committed person pursuant to the Sexually Violent Predator Act (an "SVP"), N.J.S.A. 30:4-27.24, et seq., seeks to bring this action in forma pauperis. Based on his affidavit of indigence, the Court will grant Plaintiff's application to proceed in forma pauperis pursuant to 28 U.S.C. § 1915(a) and order the Clerk of the Court to file the complaint.

      At this time, the Court must review the complaint, pursuant to 28 U.S.C. §§ 1915(e)(2)(B), to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim

upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief. For the reasons set forth below, the Court concludes that the complaint should proceed in part.

## I. BACKGROUND

Plaintiff brings this civil action, pursuant to 42 U.S.C. § 1983, against Steve Johnson, Assistant Superintendent of the Adult Diagnostic and Treatment Center; Brian Friedman, Director of Psychology of the Special Treatment Unit ("STU"); Merril Main, Clinical Director of the STU; and Layfette Davis, Food Services Supervisor of the STU. The following factual allegations are taken from the Complaint, and are accepted for purposes of this screening only. The Court has made no findings as to the veracity of plaintiff's allegations.

With regard to Defendant Steve Johnson, Plaintiff makes the following allegations. Plaintiff alleges that when his family visits, they are forced to go through metal detectors, be patted down and take off clothing, which makes his mother and sister feel "violated." His family would like to see him more than three days per week and would like something to eat and drink when they visit.

Plaintiff further alleges that a lot of the sinks and toilets in the STU do not work and the pipes leak when it rains. The toilet seat are cold when he sits on them and he is forced to get his food from a serving line that runs under a ledge where dirt and

cigarette ash can fall into it.

Plaintiff further alleges that there is no exercise equipment on his wing and he has to go to the "yard" if he wants to use equipment.  Further, the equipment in the yard is old and rusty. He is only permitted to go the yard three times per day.

Plaintiff further alleges that the medical department is "bad."  When the SVP's have medical issues, the doctors and nurses minimize the problem.  When SVP's are sent to the hospital, they are sent to a prison hospital.  Plaintiff alleges that he has a bulging disk and "they can't seem to help it."

Plaintiff further alleges that the officers violate the SVPs' rights by not allowing them to go to the yard, the law library and the right of free movement.  The officers bang on the cell four times per night, making it so the SVPs cannot get nine hours of sleep.

Plaintiff further alleges that he has been denied access to dietary health supplements such as whey protein and creatine and that there are not enough phones and they are always being used. Plaintiff further alleges that the Patient Bill of Rights is not being followed and the SVPs are not allowed to mingle with the opposite sex and he would like to "learn how to talk with women."

Plaintiff further alleges that he is only permitted to go to church once every two-three weeks when he is supposed to be permitted to go every Sunday.

Plaintiff further alleges that they are "locked in" for "counts" two to three times per day and they should not be locked in for counts even at night.

Finally, Plaintiff alleges that the laundry is "slow", sometimes taking a couple of days to get done.

With regard to Defendant Main and Freeman, Plaintiff alleges that he does not have any privacy to use the bathroom because the doors are open all day long. Plaintiff further alleges that the therapy is "bad" and the therapists do not care about them. Finally, Plaintiff alleges that he was supposed to be released "soon through the t.c." He states that his "Phase 4" was taken away and now he has "nothing."

With regard to Defendant Lafayette, Plaintiff alleges that "the food is bad [and] it don't taste good." Most of the time the food is undercooked and cold.

In relief, Plaintiff requests a declaration stating that Defendants violated his rights and an injunction for the following: requiring Plaintiff's visitors to be treated like those in other civilly committed centers; to fix all plumbing, create a dining room for food, reinstate the previous food distribution plan; requiring yard recreation both day and night; to investigate and repair the medical department and get him to a "cyropractor"; to remove all current officers and replace with new ones; allowing Plaintiff to buy vitamins and supplements; instituting a cell phone

purchase program; requiring SVPs to be covered under the Patient Bill of Rights; to create a program to allow Plaintiff to interact with the opposite sex; telling Defendant Johnson to run a weekly catholic service; requiring laundry to be done seven days a week; to create a hearing for possible "map" status; to fix all doors and windows to create privacy; to provide Plaintiff with adequate treatment; to hire a dietician; to create a civilian oversight committee; to appoint a special master to oversee all the of requested injunctions; to allow personal computers; and to fix all 600 fire code violations.

## II.  DISCUSSION

## A. Legal Standard

## 1. Standards for a Sua Sponte Dismissal

The Prison Litigation Reform Act, Pub.L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996), requires a district court to review a complaint in a civil action in which a prisoner is proceeding in forma pauperis or seeks redress against a governmental employee or entity.  The Court is required to identify cognizable claims and to sua sponte dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  See 28 U.S.C. §§ 1915(e)(2)(B). This action is subject to sua sponte screening for dismissal under 28 U.S.C. §§ 1915(e)(2) (B) because Plaintiff is proceeding as an

indigent.

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff.  See Erickson v. Pardus, 551 U.S. 89, 93-94 (2007) (following Estelle v. Gamble, 429 U.S. 97, 106 (1976) and Haines v. Kerner, 404 U.S. 519, 520-21 (1972)); see also United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).

Recently, the Supreme Court refined the standard for summary dismissal of a complaint that fails to state a claim in Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009).  The Court examined Rule 8(a)(2) of the Federal Rules of Civil Procedure which provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed.R.Civ.P. 8(a)(2).  Citing its opinion in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) for the proposition that "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,'"  Iqbal, 129 S.Ct. at 1949 (quoting Twombly, 550 U.S. at 555), the Supreme Court held that, to prevent a summary dismissal, a civil complaint must now allege "sufficient factual matter" to show that the claim is facially plausible.  This then "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  See id. at 1948.  The Supreme Court's ruling in Iqbal emphasizes that a plaintiff must demonstrate that the allegations of his

complaint are plausible. <u>See</u> <u>id.</u> at 1949-50; <u>see</u> <u>also</u> <u>Twombly</u>, 505 U.S. at 555, & n. 3; <u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203 (3d Cir. 2009).

**2.   Section 1983 Actions**

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ....

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. <u>See</u> <u>West v. Atkins</u>, 487 U.S. 42, 48 (1988); <u>Piecknick v. Pennsylvania</u>, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

**3.   The New Jersey Sexually Violent Predator Act**

The New Jersey Sexually Violent Predator Act, N.J.S.A. 30:4-27.24 et seq. ("SVPA"), provides for the custody, care and treatment of involuntarily committed persons who are deemed to be sexually violent predators. N.J.S.A. 30:4-27.26. The New Jersey Department of Corrections ("DOC") operates the facilities

designated for SVPs, N.J.S.A. 30:4-27.34(a); and the New Jersey Department of Human Services ("DHS") provides for their treatment. N.J.S.A. 30:4-27.34(b).  The SVPA was amended in 2003 to require that regulations be promulgated jointly by the DOC and the DHS, in consultation with the Attorney General, taking "into consideration the rights of the patients as set forth in section ten of P.L.1965, c. 53 (C. 30:4-24.2) ... [to] specifically address the differing needs and specific characteristics of, and treatment protocols related to, sexually violent predators." N.J.S.A. 30:4-27.34(d).

In passing the SVPA, the New Jersey Legislature made specific findings regarding SVPs.  N.J.S.A. 30:4-27.25. The Legislature noted that it was necessary to modify the previous civil commitment framework and additionally separate SVPs from other persons who have been civilly committed.  Id.  The SVPA defines an SVP as:

> ... a person who has been convicted, adjudicated delinquent or found not guilty by reason of insanity for commission of a sexually violent offense, or has been charged with a sexually violent offense but found to be incompetent to stand trial, and suffers from a mental abnormality or personality disorder that makes the person likely to engage in acts of sexual violence if not confined in a secure facility for control, care and treatment.

N.J.S.A. 30:4-27.26(b).

Those persons committed under the SVPA shall receive annual review hearings.  N.J.S.A. 30:4-27.35.  An SVP may be released from involuntary civil commitment upon recommendation of the DHS or by the SVP's own petition for discharge.  N.J.S.A. 30:4-27.36.

**B.  Analysis**

**1.  Conditions of Confinement Claim**

Plaintiff's placement in a segregated unit within a prison facility is not, in and of itself, a constitutional violation,[1] however Plaintiff makes additional, general allegations concerning the conditions of confinement at the Adult Diagnostic and Treatment Center. For instance, he complains that he is housed in a prison facility subject to restrictions. See Youngberg v. Romeo, 457 U.S. 307, 321-22 (1982) ("Persons who have been involuntarily committed are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish.").

Generally, the Fourteenth Amendment requires that civilly committed persons not be subjected to conditions that amount to punishment, Bell v. Wolfish, 441 U.S. 520, 536 (1979),[2] within the bounds of professional discretion, Youngberg, 457 U.S. at 321-22. Specifically, in Youngberg, the Supreme Court held that civilly committed persons do have constitutionally protected interests, but

---

[1] See Bagarozy v. Goodwin, Civil Action No. 08-468(SRC), 2008 WL 4416455, *7-8 (D.N.J. Sept. 23, 2008); In re Commitment of W.Z., 173 N.J. 109, 801 A.2d 205, 211 (2002) (the New Jersey SVPA is essentially the same as the Kansas and Washington SVP statutes that were examined and upheld as constitutional by the Supreme Court in Hendricks and Seling, respectively).

[2] In Bell v. Wolfish, the Supreme Court held that whether a condition of confinement of pretrial detainees violated their constitutional rights turns on whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate government purpose. 441 U.S. 520, 535-39, (1979).

that these rights must be balanced against the reasons put forth by the State for restricting their liberties.  Id. at 307.  The Constitution is not concerned with de minimis restrictions on patients' liberties.  Id. at 320.  Moreover, "due process requires that the conditions and duration of confinement [for civilly confined persons] bear some reasonable relation to the purpose for which persons are committed."  Seling v. Young, 531 U.S. 250, 265 (2001).  While the nature of an SVP's confinement may factor in this balance of what is reasonable, it is clearly established that the substantive due process protections of the Fourteenth Amendment apply to SVPs.  See Andrews v. Neer, 253 F.3d 1052, 1061 (8th Cir.2001) (applying the Fourteenth Amendment's "objective reasonableness" standard to excessive force claims brought by civilly committed SVPs).

Plaintiff's allegations with respect to the conditions of his confinement relate to his contention that he is being treated like a prisoner and subjected to prison rules.  For instance, Plaintiff complains that the ceilings and toilets leak; that the toilet seats are cold; that the guards bang on the doors so the SVP's cannot get nine hours of sleep; that he is denied access to dietary supplements; that there are not enough phones; that he is not able to interact with women; that there are multiple "counts" per day; that the laundry is "slow"; that the food is "bad" and does not taste good; and that there are no doors on the bathroom but only

curtains.

The Third Circuit has held that placement of a civilly committed SVP in segregated confinement does not violate due process unless the deprivation of liberty is in some way extreme. See Deavers v. Santiago, 243 Fed. Appx. 719, 721 (3d Cir. 2007) (applying Sandin v. Conner, 515 U.S. 472 (1995),[3] to segregated confinement of civilly committed SVPs); see also Thielman v. Leean, 282 F.3d 478 (7th Cir. 2002) (likewise extending Sandin to civil commitment settings).  Plaintiff does not contend that these conditions are intended as punishment, or that he has suffered adversely from these alleged conditions.  Based on these general allegations, even if true, the Court finds no atypical or significant deprivation that would rise to the level of a constitutional violation at this time.  As such, these claims will be dismissed without prejudice.

## 2. Unlawful Search Claim

Plaintiff's claim regarding an unlawful search relates to the search of his visitors when they come to visit him.  He alleges that when his family visits, they are forced to go through metal detectors, be patted down and take off clothing, which makes his mother and sister feel "violated."  His family would like to see

---

[3] In Sandin, the Supreme Court held that there was no cognizable liberty interest in freedom from additional restraint in a prison setting.  See 515 U.S. at 486 ("We hold that [the prisoner's] discipline in segregated confinement did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest.").

him more than three days per week and would like something to eat and drink when they visit.  However, Plaintiff has no standing to challenge these policies because "a litigant may only assert his own constitutional rights and immunities." Glasshofer v. Thornburgh, 514 F.Supp. 1242, 1246 (E.D.Pa. 1981), quoting United States v. Raines, 362 U.S. 17, 22 (1960); Glenn v. Hayman, 2007 WL 894213, at *5, n.5 (D.N.J. March 21, 2007).  Therefore, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), this claim will be dismissed for failure to state a cognizable claim under § 1983.

**3.  Limited Yard Time Claim**

Plaintiff asserts that his rights are violated by the restriction limiting his recreational time in the yard.  However, as stated above, the Third Circuit has held that placement of a civilly committed SVP in an enclosed confinement does not violate due process unless it results in a deprivation which is unrelated to a legitimate penological purposes and, in addition, amounting to a genuine privation.  See Deavers, 243 Fed. App'x at 721 (applying Sandin, 515 U.S. at 472 to segregated confinement of civilly committed SVPs)[4]; see also Hubbard v. Taylor, 538 F.3d 229, 235 (3d Cir. 2008) (holding that conditions-of-confinement claims by pretrial detainees must be assessed in light of the totality of the

---

[4] In Sandin, the Supreme Court held that there was no cognizable liberty interest in freedom from additional restraint in a prison setting.  See 515 U.S. at 486 ("We hold that [the prisoner's] discipline in segregated confinement did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest").

circumstances existing within the institution in order to determine whether the challenges condition amounts to a genuine privation).

Since Plaintiff's claim asserting limited yard time does not indicate that Plaintiff is subjected to a genuine privation as a result of him being limited to yard access only three times a day, such allegations fail to state a claim and will be dismissed without prejudice.

**4.  Medical Care Claim**

Since Plaintiff is a civil detainee, the Fourteenth Amendment is applicable to his medical claim.  See City of Revere v. Massachusetts General Hospital, 463 U.S. 239, 243-45 (1983) (holding that the Due Process Clause of the Fourteenth Amendment, rather than the Eighth Amendment, controls the issue of whether prison officials must provide medical care to those confined in jail awaiting trial); Hubbard, 399 F.3d at 158; Fuentes v. Wagner, 206 F.3d 335, 341 n. 9 (3d Cir. 2000); Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 346 n .31 (3d Cir. 1987); see also Montgomery v. Ray, 2005 WL 1995084 (3d Cir. 2005)("the proper standard for examining such claims is the standard set forth in Bell v. Wolfish, ...; i.e. whether the conditions of confinement (or here, inadequate medical treatment) amounted to punishment prior to adjudication of guilt ....") (citing Hubbard, 399 F.3d at 158).  In Hubbard, the Third Circuit clarified that the Eighth Amendment standard only acts as a floor for due process inquiries

13

into medical and non-medical conditions of pretrial detainees.  399 F.3d at 165-67.

In the instant case, Plaintiff alleges that "the medical dept. is bad...It takes sometimes weeks to see the doctor.  I went to the hospital and asked about my nose and they said, they could not take care of it because it was a cosmetic issue.  Also I have a bulging disk and they can't seem to help it."  Plaintiff has not alleged with any specificity, any inadequate medical treatment which would amount to punishment.  In fact, it appears from the statements in the complaint that Plaintiff was given medical care, but he simply disagrees with the treatment, which is not a viable constitutional claim.  As such, this claim will be dismissed without prejudice.

**5. Denial of Free Religious Exercise Clause**

Next, Plaintiff alleges that he is denied access to religious services on a regular and consistent basis.  Specifically, he alleges that he is supposed to have church every Sunday, rosaries every day, bible study once a week and confession every week.  However, he has only been getting church once every two-three weeks.  It appears from his request for relief that he practices Catholicism.

The First Amendment, made applicable to the states by the Fourteenth Amendment, Cantwell v. Connecticut, 310 U.S. 296, 303 (1940), provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise

thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." As stated above, conditions of confinement claims arise under the due process clause of the Fourteenth Amendment for pretrial detainees or civil detainees, such as those who have been committed to a state facility. See Youngberg, 457 U.S. at 312. In evaluating the constitutionality of conditions or restrictions of detention, the inquiry is whether the conditions amount to punishment of the detainee. Bell, 441 U.S. at 536. "[T]he fact that detention interferes with the detainee's understandable desire to live as comfortably as possible and with as little restraint as possible during confinement does not convert the conditions or restrictions of detention into punishment." Id. Prison administrators "should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and maintain institutional security." Id. at 547. Thus, to state a First Amendment claim, an inmate must establish allegations that indicate a constitutional violation and show that the government has no legitimate penological interest in the restrictions it imposes. See Lewis v. Casey, 518 U.S. 343, 361 (1996); Bell, 441 U.S. at 551-52.

To establish his denial of religion claim, Plaintiff must demonstrate that the restriction on religious practice was not

reasonably related to a legitimate, penological interest.  O'Lone v. Estate of Shabazz, 482 U.S. 342, 349-50 (1987); Turner v. Safley, 482 U.S. 78, 89 (1987).  This reasonableness standard involves the examination of the following four factors: (1) whether the regulation or practice in question furthers a legitimate governmental interest unrelated to the suppression of expression; (2) whether there are alternative means of exercising First Amendment rights that remain open to prison inmates; (3) whether the right can be exercised only at the cost of less liberty and safety for guards and other prisoners; and (4) whether an alternative exists which would fully accommodate the prisoners' rights at de minimis cost to valid penological interests.  See Thornburgh v. Abbott, 490 U.S. 401, 415-18 (1989); Turner, 482 U.S. at 89-91.

At this early juncture of the case, the Court finds that Plaintiff has alleged sufficient facts to permit his free exercise claim to proceed.

**6.  "MAP" Status Claim**

Plaintiff alleges that he got "locked up" for saying that "Dr. Enright is gay" during a group therapy session.  He states that he does not collect any pay when he is on MAP.  He further states that he only gets yard once a day when he is on MAP and he is only allowed to have minimal property.  He further states that he was placed on MAP without any due process and he was denied toiletries

16

while on MAP.

It appears that the "MAP" status Plaintiff refers to is the Modified Activities Program ("MAP"), which is a behavior modification program implemented by the NJDOC and NJDHS. MAP is designed to "prepare civilly committed sexual predators to safely return to the community" and focuses on "stabilizing disruptive and dangerous behaviors." Fournier v. Corzine, 2007 WL 2159584, at *8, n.11 (D.N.J. July 26, 2007) (citing M.X.L. v. New Jersey Dept. Of Human Services/New Jersey Dept. Of Corrections, 379 N.J.Super. 37, 45 (App.Div. 2005). MAP consists of four levels, proportionate to the apparent danger or instability reflected by the resident. Id. A resident committed to the most restricted level is prohibited from movement on the tier and is restricted to his room, even during meals. However, the resident may have visitors, make and receive phone calls, and is allowed to move in his separate yard. All restrictive MAP rooms have a toilet and sink. Id.

As stated above, the Third Circuit has held that placement of a civilly committed SVP in segregated confinement does not violate due process unless the deprivation of liberty is in some way extreme. Deavers, 243 Fed. Appx. at 721 ("Put another way, unless the deprivation of liberty is in some way extreme, then the Constitution does not require that a prisoner be afforded any process at all prior to deprivations beyond that incident to normal prison life. Our Court later extended Sandin's foreclosure of

procedural due process protections to a situation like that presented here–a plaintiff civilly committed in New Jersey claiming a procedural due process violation by his wrongful placement in the RAP"); see also Thielman, 282 F.3d at 478 (likewise extending Sandin to civil commitment settings).

Thus, Plaintiff's allegations that he was placed on MAP status for disruption during group and that general movement is monitored and restricted, without more, fails to articulate a cognizable claim of constitutional magnitude, in light of Deavers. Though he alleges that he was without soap for a period of time, this allegation, without more, does not arise to an extreme deprivation. As such, this claim will be dismissed without prejudice

**7. Denial of Treatment Claim**

Plaintiff also alleges that the therapy he is receiving is "bad." He states that the therapists do not care about the SVP's He states that the therapists have been heard saying that they are only there for the money. He states that the therapists are very rigid and that the therapists have no empathy for them. Thus, Plaintiff appears to argue that he is denied the right to adequate treatment and reasonable care applicable to civilly committed SVPs, in violation of the Fourteenth Amendment.

The Fourteenth Amendment to the United States Constitution, § 1, guarantees that "[n]o State shall ... deprive any person of life, liberty, or property, without due process of law." This due

process guarantee has been interpreted to have both procedural and substantive components, the latter which protects fundamental rights that are so "implicit in the concept of ordered liberty" that "neither liberty nor justice would exist if they were sacrificed." Palko v. Conn., 302 U.S. 319, 325 (1937).  These fundamental rights include those guaranteed by the Bill of Rights, as well as certain liberty and privacy interests implicitly protected by the Due Process Clause, such as the right to marry. Washington v. Glucksberg, 521 U.S. 702, 720 (1997).  Substantive due process also protects against government conduct that is so egregious that it "shocks the conscience," even where the conduct does not implicate any specific fundamental right.  See United States v. Salerno, 481 U.S. 739, 746 (1987).

Laws disturbing fundamental rights receive strict scrutiny and will be upheld if they are "narrowly tailored to serve a compelling state interest."  Reno v. Flores, 507 U.S. 292, 302 (1993). However, regulations not implicating fundamental rights (in other words, those claims attacking particularly egregious or arbitrary governmental actions) are analyzed under the deferential standard referred to as the rational basis review, and will generally succeed only if the government action shocks the conscience.  See Glucksberg, 521 U.S. at 728.

With respect to Plaintiff's claim, it appears that he is asserting that he has a fundamental right to adequate treatment as

a civilly committed sex offender, and that as a result of the prison setting he is not being afforded adequate treatment. The Supreme Court established that there exists a constitutionally protected right of mentally retarded persons confined at a state institution to minimally adequate treatment. Specifically, the Supreme Court held that there is a constitutional right of mentally disabled persons confined at a state institution to "minimally adequate habilitation", self-care treatment or training to the extent necessary to protect their recognized fundamental rights to safety and freedom from physical restraints. Youngberg, 457 U.S. at 316, 319 and 322.

The Supreme Court further held that, where a fundamental right is at issue, a district court must balance "the liberty of the individual and the demands of an organized society" to determine whether such right has been violated. Youngberg, 457 U.S. at 320. Although restrictions burdening a fundamental right generally receive strict scrutiny, in Youngberg, the Supreme Court found that this sort of rigorous analysis would unduly burden the ability of states, specifically their professional employees, to administer mental health institutions. Id. at 322. Consequently, the Court concluded that "the Constitution only requires that the courts make certain that professional judgment was in fact exercised," because "[i]t is not appropriate for the courts to specify which of several professionally acceptable choices should have been made." Id. at

321 (internal quotation and citation omitted).  Thus, a decision, "if made by a professional, is presumptively valid; liability may be imposed only when the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such judgment." Id. at 323.

In Leamer v. Fauver, 288 F.3d 532 (3d Cir. 2002), the United States Court of Appeals for the Third Circuit held that New Jersey's unique former statutory scheme for sex offenders that predicated the term of sentence on a prisoner's response to treatment and created a right to treatment created a fundamental and cognizable liberty interest in treatment, for purposes of both procedural and substantive due process analyses.  288 F.3d at 545. Leamer was not a civilly committed sex offender like Plaintiff here.   Rather, Leamer was a convicted sex offender whose confinement and treatment were inextricably linked pursuant to statute.  The sentencing court had classified Leamer as having a "mental aberration" and in need of "specialized treatment," which automatically subjected Leamer to the maximum incarceration permitted by law unless he is cured prior to that point.  Leamer could not reduce his sentence through good behavior credits, parole policies or other credits.  Instead, he could only shorten his incarceration through successful therapy, which was an "inherent

and integral element" of the statutory scheme.  Consequently, the
Third Circuit found that deprivation of treatment would be a
grievous loss not emanating from the sentence.  <u>Leamer</u>, 288 F.3d at
544.

Apart from that recognized in <u>Youngberg</u> to prevent the
violation of recognized fundamental rights to safety and freedom
from physical restraints, this Court has found that the Third
Circuit's holding in <u>Leamer</u> clearly extends to an involuntarily
committed sex offender under New Jersey's SVPA.  <u>See</u>, <u>e.g.</u> <u>Belton</u>
<u>v. Singer</u>, 2011 WL 2690595 (D.N.J. July 08, 2011); <u>Graham v. Sharp</u>,
2011 WL 2491347 (D.N.J. June 20, 2011); <u>Barber v. Sharp</u>, 2011 WL
2223651 (D.N.J. June 02, 2011); <u>Anderson v. DaCosta</u>, 2011 WL
2223713 (D.N.J. June 01, 2011).  Like Leamer, the length of
Plaintiff's confinement under the SVPA is predicated on his
response to treatment.  Indeed, the provisions of the SVPA
explicitly recognize New Jersey's obligation to provide treatment
to SVPs for their eventual release based on successful therapy.
<u>See</u> N.J.S.A. 30:4-27.32(a) ("If the court finds by clear and
convincing evidence that the person needs continued involuntary
commitment as a sexually violent predator, it shall issue an order
authorizing the involuntary commitment of the person to a facility
designated for the custody, care and treatment of sexually violent
predators") (emphasis added); N.J.S.A. 30:4-34(b) ("The Division of
Mental Health Services in the Department of Human Services shall

22

provide or arrange for treatment for a person committed pursuant to this act.  Such treatment shall be appropriately tailored to address the specific needs of sexually violent predators."); N.J.S.A. 30:4-27.36(a) (At any time during the involuntary commitment of a person under this act, if the person's treatment team determines that the person's mental condition has so changed that the person is not likely to engage in acts of sexual violence if released, the treatment team shall recommend that the Department of Human Services authorize the person to petition the court for discharge from involuntary commitment status"); see also Kansas v. Hendricks, 521 U.S. 346, 367 (1997) (concluding from similarly-worded provisions of Kansas SVP Act that "the State has a statutory obligation to provide 'care and treatment for [persons adjudged sexually dangerous] designed to effect recovery ....") (alterations in original) (internal citations omitted).

Therefore, based on Youngberg and Leamer, this Court concludes that Plaintiff may have a fundamental liberty interest in treatment, but has not stated a cognizable claim at this time for purposes of both procedural and substantive due process analyses. See Bailey v. Gardebring, 940 F.2d 1150, 1154 (8th Cir. 1991)(where the Eighth Circuit noted that Youngberg did not establish a right for the civilly committed to treatment per se; the Supreme Court only "held that the Constitution required only such 'minimally adequate training ... as may be reasonable in light of [the]

liberty interest[ ] in safety and freedom from unreasonable restraints.' ")(quoting Youngberg, 457 U.S. at 322).

Indeed, Plaintiff's complaint fails to show any procedural or substantive due process violations to date.  Plaintiff does not demonstrate a categorical denial of therapy and treatment sessions due to the prison setting in which he receives his treatment.  He fails to allege even one instance where his therapy group session was cancelled.  Thus, there simply is no evidence that Plaintiff has been denied therapy sufficient to give rise to a claim of constitutional magnitude.

The complaint contains no factual allegations of an absolute denial of treatment.  Rather, Plaintiff merely alleges that the therapists do not seem to "care" about the SVP's.  He does not allege that he has been denied treatment altogether.

This Court likewise finds no substantive due process violation at this time.  Substantive due process prevents the government from engaging in conduct that "shocks the conscience," or interferes with rights "implicit in the concept of ordered liberty." Glucksberg, 521 U.S. at 721.  Under this standard, Defendants' actions in denying Plaintiff his statutory right to treatment will be found unconstitutional under the Fourteenth Amendment if they were so arbitrary or egregious as to shock the conscience.  Leamer, 288 F.3d at 546–47 (substantive due process claim alleging inadequate treatment for committed sex offender "must focus on the

challenged abuse of power by officials in denying [the plaintiff] the treatment regimen that was statutorily mandated and was necessary in order for his condition to improve, and thus for him to advance toward release").

Here, as demonstrated above, Defendants have not categorically declined to provide any mental health treatment to Plaintiff. Thus, this Court cannot readily conclude that Defendants' actions were conscience-shocking and in violation of Plaintiff's substantive due process rights. Indeed, Plaintiff's allegations, as set forth above, are merely conclusory. Plaintiff has not shown any disruption of treatment. Instead, he simply objects to the manner in which treatment and sessions are provided.

Thus, the Court concludes that there is no demonstrated interruption of adequate treatment that would rise to the level of a constitutional due process deprivation. Further, this Court concludes that the allegations asserted in by Plaintiff do not show such egregious conduct or disruption as to render his mental treatment conscience-shockingly deficient.

Accordingly, based on the facts as alleged in the Complaint, Plaintiff's claim alleging inadequate treatment will be dismissed without prejudice for failure to state a cognizable claim of a deprivation of a constitutional right.

## V. CONCLUSION

For the reasons set forth above, Plaintiff's conditions of

confinement claim, unlawful search claim, limited yard time claim, medical care claim, "MAP" status claim and denial of treatment claim will be dismissed without prejudice for failure to state a claim, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). Plaintiff may move to file an amended complaint to correct the deficiencies, and to allege sufficient facts to demonstrate the plausibility of the dismissed claims, as outlined in Iqbal, and in accordance with this Opinion.  Plaintiff's motion to amend must adhere to the court rules.[5]  Plaintiff's free exercise claim will be permitted to proceed at this time.  An appropriate order follows.


Dated: August 4, 2011




                                        s/Susan D. Wigenton
                                        SUSAN D. WIGENTON
                                        UNITED STATES DISTRICT JUDGE

---

[5] To the extent that Plaintiff chooses to amend his Complaint to cure the deficiencies noted herein, pursuant to Federal Rule of Civil Procedure 15, Plaintiff should note that when an amended complaint is filed, the original complaint no longer performs any function in the case and "cannot be utilized to cure defects in the amended [complaint], unless the relevant portion is specifically incorporated in the new [complaint]." 6 Wright, Miller & Kane, Federal Practice and Procedure § 1476 (2d ed. 1990) (footnotes omitted).  An amended complaint may adopt some or all of the allegations in the original complaint, but the identification of the particular allegations to be adopted must be clear and explicit.  Id. To avoid confusion, the safer course is to file an amended complaint that is complete in itself. Id.