UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

MARK CREVELING,

          Plaintiff,

          v.

STEVE JOHNSON, et al.,

          Defendants.

Civil Action No. 11-667 (SDW)(MCA)

**OPINION**

February 11, 2013

**WIGENTON**, District Judge.

Before the Court is Steve Johnson's ("Defendant" or "Johnson") Motion for Summary Judgment ("Motion") pursuant to Fed. R. Civ. P. 56(c). Mark Creveling ("Plaintiff") has not opposed the Motion and is proceeding as a *pro se* litigant. This Court has jurisdiction pursuant to 28 U.S.C. § 1331. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b). This Motion is decided without oral argument pursuant to Fed. R. Civ. P. 78. For the reasons stated below, this Court grants Defendant's Motion.

**FACTUAL HISTORY**

*Plaintiff's Background*

Mark Creveling ("Plaintiff") is civilly committed to the Special Treatment Unit ("STU") in Woodbridge Township, New Jersey, pursuant to the New Jersey Sexually Violent Predator Act, N.J.S.A. 30:4-27.24, et seq. (Def.'s Br. 1.) Plaintiff practices the Roman Catholic faith and states that he is "suppose[d] to have Sunday church every Sunday, rosaries every day, and Bible study once a week and confession every week." (Compl. ¶ 10 at 13; Deposition of Mark Creveling ("Creveling Dep.") at 17:22-24 (May 11, 2012); Def.'s Br. 3.) Plaintiff claims that he

has practiced Catholicism "[a]ll [his] life" which included attending church masses, "[r]osaries, prayers, [and] adoration." (Creveling Dep. 17:25-18:15.) Plaintiff also attended a youth group and prayed in his home as well as others' homes. (Creveling Dep. 19:4-5.) Plaintiff asserted that he received all of the sacraments. (Creveling Dep. 20:1-3.) Although Plaintiff is confined to the STU, he is allowed to keep a Bible, rosaries, prayer cards, and a cross, in addition to anything else that may "contribute[ ] to [his] faith." (Creveling Dep. 26:3-16.)

*STU Facilities*

Since 2007, Omar Soriano ("Soriano") has served as STU's Supervisor of Chaplaincy Services. (Soriano Decl. ¶ 1.) Because STU residents have restricted access to the general public and vice versa, the STU relies on available and willing volunteers to enter the STU to provide religious services. (Soriano Decl. ¶¶ 3-4.) STU residents are allowed to have a Bible, purchase religious effects, and receive a special religious diet. (Soriano Decl. ¶ 26.)

From 2007 until February 2011, Father Michael Scott ("Fr. Scott") of the Diocese of Metuchen voluntarily provided bi-weekly mass services and confession to STU residents. (Soriano Decl. ¶¶ 5-6; Creveling Dep. 29:8-21.) After Fr. Scott passed away in February 2011, Soriano began searching for another volunteer. (Soriano Decl. ¶¶ 7-8.)

Neither the New Jersey Department of Corrections[1] ("NJDOC") nor the STU facility maintains a database of preapproved volunteers to provide religious services. (Soriano Decl. ¶ 9.) Thus, NJDOC sought volunteers "through word of mouth, and the recommendation of specific religious officials (such as priests and nuns)." (Soriano Decl. ¶ 15.) Additionally, in April 2011, Soriano called the Diocese of Metuchen multiple times and left messages indicating

---

[1] The STU facility is operated by the New Jersey Department of Corrections ("NJDOC"). (Def.'s Br. 1.)

that he was seeking volunteers. (Soriano Decl. ¶¶ 11-14.) Soriano also accessed the Diocese website to obtain contact information for potential volunteers. (Soriano Decl. ¶ 11.)

By late 2011, an applicant was approved and has "since provided volunteer services to STU residents." (Soriano Decl. ¶ 20.) The STU also had four volunteers who provided Catholic services in early 2012. (Soriano Decl. ¶ 22.) By mid-April 2012, the STU was able to obtain volunteer services from Father Sean Winters ("Fr. Winters") in order to provide mass on a bi-weekly basis or as his schedule permitted. (Soriano Decl. ¶¶ 23-24.)

In his deposition, Soriano indicated that "the fact that a Catholic priest does not come weekly, or that there was any period of time at present or in the past that a Catholic priest did not come to provide mass, was not due to any rule, policy, or restriction put in place by the NJDOC. Rather, the reason was because a volunteer, despite good-faith efforts to find one, was simply not available." (Soriano Decl. ¶¶ 1, 27.) Although Catholic services were not always available without interruption from 2011-2012, "other Catholic volunteers have been available for service to the STU residents." (Soriano Decl. ¶ 26.) For example, as Plaintiff stated, mass was held on Good Friday in 2012. (Def.'s Br. 6.)

*Plaintiff's Free Exercise of Religion Claim*

Plaintiff asserts that the STU's failure to hold weekly mass violated his First Amendment right to exercise his religion. (See Compl.) Plaintiff seeks an injunction requiring Johnson, Assistant Director at the STU, to provide weekly Catholic services which include "mass, prayers, confession and Bible study." (Def.'s Br. 5.) Plaintiff also seeks a declaratory judgment in connection with his free exercise of religion claim. (Def.'s Br. 3.) Plaintiff does not seek monetary damages. (Def.'s Br. 3.)

**PROCEDURAL HISTORY**

On February 4, 2011, Plaintiff filed his Complaint and raised various claims against several defendants, one of whom was Johnson. On August 4, 2011, this Court dismissed all of Plaintiff's claims except his free exercise of religion claim. After discovery was completed, on August 24, 2012, Johnson filed this Motion for Summary Judgment. Plaintiff has not opposed the Motion.

**LEGAL STANDARD**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). A fact is only "material" for purposes of a summary judgment motion if a dispute over that fact "might affect the outcome of the suit under the governing law." Id. at 248. A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. The dispute is not genuine if it merely involves "some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden of proof. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Once the moving party meets its initial burden, the burden then shifts to the nonmovant who must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations, speculations,

unsupported assertions or denials of its pleadings.  Shields v. Zuccarini, 254 F.3d 476, 481 (3d Cir. 2001).  "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (quoting Anderson, 477 U.S. at 255).

The nonmoving party "must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue."  Podobnik v. U.S. Postal Serv., 409 F.3d 584, 594 (3d Cir. 2005) (quoting Celotex Corp., 477 U.S. at 325).  Further, the nonmoving party is required to "point to concrete evidence in the record which supports each essential element of its case."  Black Car Assistance Corp. v. New Jersey, 351 F. Supp. 2d 284, 286 (D.N.J. 2004).  If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which . . . [it has] the burden of proof," then the moving party is entitled to judgment as a matter of law.  Celotex Corp., 477 U.S. at 322-23.

**DISCUSSION**

    **I.**    **Plaintiff's Claim Regarding Denial of Free Exercise of Religion**

The First Amendment of the Constitution states that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof[.]"  U.S. CONST. Amend. I.  "Although patients at state institutions do have constitutionally protected interests, these rights must be balanced against the reasons put forth by the State for restricting their liberties."  Rivera v. Rogers, No. 02-2798, 2006 WL 1455789, at *2 (D.N.J. May 22, 2006) (citing Youngberg v. Romeo, 457 U.S. 307, 307 (1982)).  Accordingly, to establish a First

5

Amendment claim, an institutionalized patient or inmate must demonstrate a constitutional violation and show that the government has no legitimate penological interest in the restrictions it imposes. See Lewis v. Casey, 518 U.S. 343, 361 (1996). In this case, Plaintiff maintains that his First Amendment right to free exercise of religion has been violated. As discussed below, this Court finds that no constitutional right has been violated.

### A. Plaintiff's Right To Free Exercise of Religion Has Not Been Violated.

In analyzing First Amendment free exercise claims, the Supreme Court articulated four factors that courts should consider to determine the reasonableness of a particular prison regulation: (1) a "valid, rational connection" between the regulation and the legitimate, neutral governmental interest put forward to justify it; (2) whether there are alternative means of exercising the right at issue; (3) the burden imposed on the facility to accommodate the asserted right; and (4) whether any ready alternatives exist. Turner v. Safley, 482 U.S. 78, 89-90 (1987). The Third Circuit adopted the Turner factors. See e.g., Sharp v. Johnson, 669 F.3d 144 (3d Cir. 2012).

In Gittlemacker v. Prasse, the Third Circuit tackled the issue of a prisoner's alleged violation of the Free Exercise Clause "because the state ha[d] not supplied him with a clergyman of his faith." 428 F.2d 1, 4 (3d Cir. 1970). While most cases involving the free exercise of religion address limitations or denial to practice a religion, Gittlemaker posed the opposite issue. As the Third Circuit articulately stated, this argument is "the antithesis of the cases arising under the Establishment Clause: This is not a charge that the state is supporting a religion, but a complaint that it is not." Id. In Gittlemacker, the Third Circuit held that the prison did not have an "affirmative duty to provide, furnish, or supply every inmate with a clergyman or religious services of his choice." Id.; see also Cruz v. Beto, 405 U.S. 319, 322 n.2 (1972) (the Supreme

6

Court noted that "[a] special chapel or place of worship need not be provided for every faith regardless of size; nor must a chaplain, priest, or minister be provided without regard to the extent of the demand").

In the instant matter, this Court finds that Plaintiff has not suffered a constitutional violation. Plaintiff's sole complaint is that STU's failure to hold weekly mass violated his First Amendment right to exercise his religion. (See Compl; Creveling Dep. 16:12-21.) Plaintiff does not point to any rule or regulation banning or limiting his exercise of religion. Specifically, Plaintiff's claim is directed at the only remaining defendant, Johnson. Similar to Gittlemacker, Plaintiff's complaint is not that the STU or Johnson restricted his exercise of religion, but rather that they failed to fully furnish him with religious services of his choice.

Based on the record, the STU facility is willing to have Catholic services, but volunteers are needed to provide these services. The STU made efforts to obtain volunteers. (See Soriano Decl. ¶ 8, 11.) However, the STU does not have an affirmative duty to supply its residents with priests or religious services. See Gittlemacker, 428 F.2d at 4; Cruz, 405 U.S. at 322 n.2. Moreover, the STU allowed residents to have a Bible, purchase religious effects, and receive a special religious diet. (Soriano Decl. ¶ 26.) Plaintiff testified that he is allowed to keep a Bible, rosaries, prayer cards, and a cross, in addition to anything else that may "contribute[ ] to [his] faith." (Creveling Dep. 26:3-16.) Nothing in the record suggests that Johnson or the STU unreasonably restricted Plaintiff's ability to practice his religion. Thus, Plaintiff has not suffered a constitutional violation.

## II.     Plaintiff's Remedies

As Plaintiff has failed to establish a viable First Amendment claim, this Court need not address Plaintiff's requests for injunctive relief and a declaratory judgment as they are moot.

**CONCLUSION**

       For the reasons stated above, Defendant's Motion for Summary Judgment is GRANTED.

<u>s/ Susan D. Wigenton, U.S.D.J.</u>

cc:    Magistrate Judge Madeline C. Arleo